# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CAO LIGHTING, INC., *Plaintiff*, v. GENERAL ELECTRIC COMPANY, CONSUMER LIGHTING (U.S.), LLC d/b/a GE LIGHTING, and CURRENT LIGHTING SOLUTIONS, LLC, *Defendants*. | C.A. No. 20-681-GBW **JURY TRIAL DEMANDED** |
| CAO LIGHTING, INC., *Plaintiff*, v. OSRAM SYLVANIA, INC. and LEDVANCE, LLC, *Defendants*. | C.A. No. 20-690-GBW **JURY TRIAL DEMANDED** |

**DEFENDANTS' OPPOSITION TO CAO LIGHTING'S MOTION TO STRIKE AND CROSS-MOTION TO CONFORM TO THE EVIDENCE UNDER <u>FEDERAL RULE OF CIVIL PROCEDURE 15(B)(1)</u>**

Defendants in the GE/Current Lighting case (C.A. No. 20-681) and the LEDVANCE/OSI case (C.A. No. 20-690) oppose CAO Lighting's Motion to Strike (D.I. 424 in -681) and, pursuant to Federal Rule of Civil Procedure 15(b)(1), cross-move to conform their inequitable conduct affirmative defense and counterclaim to the evidence that previously was admitted during the February jury trial phase of the GE/Current case. During the jury trial, Dr. Cao admitted for the first time that he had purchased prior art Lumileds LEDs, used them in a prototype, and included a drawing of them in his patent applications. That testimony contradicted his prior deposition testimony, in which he swore he instead had used LEDs from one of his own companies for his prototype and claimed not to remember anything about Lumileds LEDs.

CAO Lighting's Motion to Strike inexplicably fails to mention Rule 15(b)(1) and focuses on Rule 15(b)(2), even though Defendants specifically told CAO Lighting they believe the former rule governs. CAO Lighting's Motion to Strike fails to make the required showing of prejudice under Rule 15(b)(1). Both CAO Lighting and the Court recognized during the February jury trial that Dr. Cao's testimony relates to inequitable conduct, with the Court remarking "this goes to inequitable conduct, doesn't it?" Ex. A [Trial Tr. Feb. 13, 2023] at 336:14-15. Only now, on the eve of the bench trial, has CAO Lighting objected to Defendants' intended reliance on the jury trial evidence. CAO Lighting's objections are meritless. Defendants therefore oppose CAO Lighting's Motion to Strike and cross-move under Rule 15(b)(1) to conform their pleadings to the evidence. Defendants' proposed amended Answers and Counterclaims are attached. Exs. G-N.

**Background:** Dr. Cao is the named inventor on the '961 patent. Ultimately, all of the original '961 patent claims were cancelled in reexamination and a new set of claims, all requiring an LED configured to emit light at about 40 mW or higher, issued. During reexamination, the patent owner represented that the prior art lacked such high-powered LEDs, and the examiner, in allowing the new claims to issue, specifically relied on that representation: "Proposed new claim 21, from which all of the other proposed new claims depend directly or indirectly, includes a feature requiring the semiconductor chip to be 'a light emitting diode (LED) chip configured to output light at greater than about 40 9 milliwatts,' which Patent Owner argues is not explicitly taught or suggested by any reference currently relied on to reject the claims … . *For this reason, the claims are found patentable*." Ex. B [Notice of Intent to Issue] at 4 (emphasis added).

At the jury trial conducted in the GE/Current case in February 2023, however, Dr. Cao testified that prior to submitting his original patent applications, he had purchased high-powered prior art Lumileds LEDs. Ex. A [Trial Tr. Feb. 13, 2023] at 291:13-292:20. And he further admitted that he had used them both in making a prototype and in preparing a drawing used in his patent application. *Id.* at 292:23-293:1, 294:20-295:1. The Lumileds LEDs are a key piece of prior art. The evidence shows that Lumileds LEDs are configured to emit light at 40 mW or higher. Ex. C [Trial Tr. Feb. 17, 2023] at 790:3-7; *see also id.* at 799:25-800:18. At the forthcoming bench trial, Defendants intend to submit an expert opinion from Dr. Krames that the Lumileds LED would have been material to the PTO's analysis of patentability, especially during reexamination.

Importantly, Dr. Cao's testimony during the jury trial contradicted what he said at his deposition, where he testified he had used an LED from another company with which he claimed to be affiliated, Golden Valley Optoelectronics, for his prototype—not a Lumileds LED. Ex. D [Cao Depo Tr. Jan. 21, 2022] at 27:7-18. When asked a series of questions about the LEDs used in his prototypes, Dr. Cao repeatedly responded "I do not remember"—including when asked

...
...

whether he had "any sort of purchase order that reflect[ed] who [he] purchased the[] LED chips from." *Id.* at 27:7-28:16. And when asked about Lumileds specifically—in particular, whether he was "purchasing th[e]se LEDs from Lumiled"—he again answered: "I don't remember." *Id.* at 30:8-16. Dr. Cao never admitted having anything more than a passing familiarity with Lumileds—let alone that he had used them in his prototype and for his patent drawing. *See id.*

The significance of Dr. Cao's different trial testimony for purposes of inequitable conduct was immediately apparent to the parties. In response to the cross-examination question "You didn't tell the Patent Office about your Lumileds LEDs, did you?," counsel for CAO Lighting objected and argued: "So this is getting right into not disclosing references to the Patent Office as part of a misconduct to the Patent Office. This is exactly what Your Honor said would be tried in the inequitable contact case." Ex. A [Trial Tr. Feb. 13, 2023] at 335:20-337:3. The Court likewise said "this goes to inequitable conduct, doesn't it?" *Id.* at 336:14-15. GE/Current counsel reached out to CAO Lighting counsel soon after the jury trial to confirm that Defendants would rely on Dr. Cao's Lumileds testimony in support of their inequitable conduct case. Ex. E [March 30, 2023 e-mail]. Defendants asked CAO Lighting whether it would consent to an amendment. *Id.* CAO Lighting did not respond and certainly did not object. Defendants raised the issue again on May 11, 2023, in their draft of the Final Pretrial Order. The parties met and conferred on May 16, 2023, during which CAO Lighting for the first time said it would object to Defendants' reliance on Dr. Cao's jury trial testimony. CAO Lighting then formally moved on May 22, 2023 to preclude Defendants from relying on Lumileds at the bench trial, by filing its Motion to Strike.

**Argument:** The Federal Rules expressly contemplate a situation in which the evidence at trial is different than what the parties anticipated in their pleadings. Rule 15(b)(1) provides, in relevant part, that "[i]f, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits." Rule 15(b)(1) exists for situations like this one, in which a party admits new facts during trial. *See Guenther v. BP Ret. Accumulation Plan*, 50 F.4th 536, 544 (5th Cir. 2022) ("A complaint opens the door to litigation; it is not the final word on the matter."); *King v. Kramer*, 763 F.3d 635, 642-43 (7th Cir. 2014) (explaining that Rule 15 "permits flexibility for a plaintiff to adjust her legal theory over the course of litigation").

"[T]he 'touchstone' for deciding whether or not to grant leave to amend is whether the opposing party will be unduly prejudiced." *Feuerstein v. Simpson*, 582 F. App'x 93, 98 (3d Cir. 2014). Under the Rule, the burden is on CAO Lighting to "satisfy" the Court "that the evidence would prejudice the party's action …." Fed. R. Civ. P. 15(b)(1). CAO Lighting cannot demonstrate prejudice here. Defendants seek to conform their pleadings to the jury trial testimony of *CAO Lighting's own principal*, Dr. Cao, concerning his purchase and use of Lumileds LEDs. Dr. Cao previously testified at his deposition that he had used his own LEDs, not a Lumileds LED, for the prototype, and testified that he could not remember even purchasing Lumileds LEDs. *See supra*, p. 1-2. His jury trial testimony contradicted what he told Defendants during discovery. CAO Lighting was—or certainly should have been—aware of the truth of the matter for years.

Second, Defendants seek to rely on this new evidence only to support of their *existing* defenses and counterclaims. The operative answers and counterclaims asserting inequitable

2

conduct have been on file for over two years. D.I 53, 59 in -681; D.I. 75, 76 in -690. Defendants have always focused on Dr. Cao's and his counsels' lack of candor with the PTO concerning the 40 mW limitation. *E.g.,* D.I. 286 in -681 at 9-10. Relatedly, Defendants also have long argued that the claims-in-suit were obvious in light of the Lumileds LED. Ex. F, Final Invalidity Contentions at 22-25. CAO Lighting therefore cannot be surprised that Defendants consider it material inequitable conduct for Dr. Cao to have withheld the Lumileds LEDs from the examiners.

Third, CAO Lighting has known for months that Dr. Cao's jury trial admissions would be relevant to Defendants' inequitable conduct case. CAO Lighting's own counsel repeatedly argued during the jury trial that Dr. Cao's failure to disclose the Lumileds LED to the PTO would be more properly considered in the context of inequitable conduct: "This is exactly what Your Honor said would be tried in the inequitable contact case." Ex. A [Trial Tr. Feb. 13, 2023] at 336:1-4. The Court agreed, remarking, among other things, "this goes to inequitable conduct, doesn't it?" *Id*. at 336:14-15. And Defendants have been telling CAO Lighting since at least March 30 that they would raise Dr. Cao's failure to disclose the Lumileds LED during the bench trial. *See* Ex. E.

And fourth, the prejudice to Defendants from not allowing the amendment would be severe. Dr. Cao misled Defendants at his deposition. The truth only came out on cross-examination during the jury trial. If Dr. Cao had truthfully testified at his deposition, Defendants could have amended their pleadings long before trial. Given Dr. Cao's misleading deposition testimony, it would be grossly unfair not to allow Defendants to rely on his jury trial admissions in the bench trial.

CAO Lighting's grab-bag of objections in its Motion to Strike are not well stated. CAO Lighting largely focuses on Rule 15(b)(2), but Defendants properly are reacting under Rule 15(b)(1) to the evidence that came in trial, not relying on CAO Lighting's "consent." For the same reason the *pretrial* scheduling order is irrelevant; under Rule 15(b)(1), Defendants may tailor their case to the evidence *during trial*. CAO Lighting does not cite a single case applying Rule 16 to a Rule 15(b)(1) situation. Defendants *did* try exploring Lumileds during discovery; as recounted above, Dr. Cao's testimony during his deposition was materially different than his trial testimony. If Dr. Cao's deposition testimony had been the same as his trial testimony, both parties would have had more time to prepare for the bench trial; the blame falls squarely on Dr. Cao. Under Rule 15(b)(1) Defendants were not required to move for leave to amend until CAO Lighting objected that Lumileds is not encompassed by the pleadings, which it now has in its Motion to Strike. L.R. 15.1 only requires proposed amended pleadings, which are attached. CAO Lighting argues that Dr. Cao's trial testimony does not really show inequitable conduct, and it points to its redirect of Dr. Cao, but such merits arguments and credibility determinations should be decided after the bench trial. And its argument that Dr. Cao, who has lived in the U.S. since the 1980s and is an accomplished businessman and scientist, was confused during cross examination because English is not his native language, is meritless; his answers were immediate and betrayed no confusion.

Finally, even if the Court concludes that only Rule 15(b)(2) applies here, it should find that CAO Lighting's repeated acknowledgements during the jury trial that the Lumileds issue relates to inequitable conduct amounts to "implied consent." And Rule 15(b)(2), like Rule 15(b)(1), is highly permissive, providing that "A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue." For all the reasons amendment under Rule 15(b)(1) is appropriate and not unduly prejudicial, the same would be true under Rule 15(b)(2).

DATED: May 25, 2023

| | |
|---|---|
| SHAW KELLER LLP | MCCARTER & ENGLISH, LLP |
| */s/ Nathan Hoeschen* | */s/ Daniel M. Silver* |
| Karen E. Keller (# 4489) | Daniel M. Silver (#4758) |
| Andrew E. Russell (# 5382) | Alexandra M. Joyce (#6423) |
| Nathan Hoeschen (# 6232) | Renaissance Centre |
| I.M. Pei Building | 405 N. King Street, 8th Floor |
| 1105 North Market Street, 12th Flr. | Wilmington, Delaware 19801 |
| Wilmington, DE 19801 | Telephone: (302) 984-6300 |
| (302) 298-0700 | Email: dsilver@mccarter.com |
| kkeller@shawkeller.com | Email: ajoyce@mccarter.com |
| arussell@shawkeller.com | |
| nhoeschen@shawkeller.com | OF COUNSEL: |
| | |
| OF COUNSEL | Arthur P. Licygiewicz |
| Mark Hannemann | NORTON ROSE FULBRIGHT US LLP |
| LOCKE LORD LLP | 2200 Ross Ave., Suite 3600 |
| Brookfield Place | Dallas, Texas 75201 |
| 200 Vesey Street, 20th Flr. | Telephone: (214) 855-8256 |
| New York, NY 10281 | Email: art.licygiewicz@nortonrosefulbright.com |
| (212) 415-8600 | |
| | Stephanie N. DeBrow |
| *Attorneys for OSRAM Sylvania, Inc.* | Catherine Garza |
| | Peter M. Hillegas |
| | Gabriel Culver |
| | NORTON ROSE FULBRIGHT US LLP |
| | 98 San Jacinto Blvd., Suite 1100 |
| | Austin, TX 78701 |
| | Telephone: (512) 536-3094 |
| | stephanie.debrow@nortonrosefulbright.com |
| | cat.garza@nortonrosefulbright.com |
| | peter.hillegas@nortonrosefulbright.com |
| | gabriel.culver@nortonrosefulbright.com |
| | |
| | *Attorneys for Defendants* |
| | *General Electric Company and Consumer* |
| | *Lighting (U.S.), LLC d/b/a GE Lighting* |

4

| | |
|---|---|
| MORRIS, NICHOLS,<br>  ARSHT & TUNNEL LLP | MORRIS JAMES LLP |
| | |
| */s/ Rodger D. Smith II* | */s/ Kenneth L. Dorsney* |
| Rodger D. Smith II (#3778)<br>1201 North Market Street<br>P.O. Box 1347<br>Wilmington, DE 19800<br>(302) 658-9200<br>rsmith@mnat.com | Kenneth L. Dorsney (#3726)<br>Cortlan S. Hitch (#6720)<br>500 Delaware Ave., Ste. 1500<br>Wilmington, DE 19801-1494<br>Email: kdorsney@morrisjames.com<br>Email: chitch@morrisjames.com |
| OF COUNSEL:<br>Srikanth K. Reddy<br>Kevin P. Martin<br>Brian T. Drummond<br>GOODWIN PROCTER LLP<br>100 Northern Avenue<br>Boston, MA 02210<br>(617) 570-1000<br>sreddy@goodwinlaw.com<br>kmartin@goodwinlaw.com<br>bdrummond@goodwinlaw.com | OF COUNSEL:<br>Frank A. Angileri<br>Thomas Cunningham<br>John P. Rondini<br>Brooks Kushman P.C.<br>1000 Town Center, 22nd Floor<br>Southfield, MI 48075<br>fangileri@brookskushman.com<br>tcunningham@brookskushman.com<br>jrondini@brookskushman.com |
| *Attorneys for Ledvance LLC* | *Attorneys for Defendant Current Lighting Solutions, LLC* |